UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, | ) <br> ) <br> ) |
| Plaintiff, | ) Case No. 12 C 3609 <br> ) |
| v. | ) Magistrate Judge Sidney I. Schenkier <br> ) |
| NATIONWIDE MUTUAL INSURANCE COMPANY, *et al.* | ) <br> ) <br> ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Allstate Insurance Company ("Allstate"), and Defendants, Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, Nationwide General Insurance Company, and Nationwide Insurance Company of America ("Nationwide"), are in the midst of fact discovery in this patent infringement/invalidity case. Fact discovery closes on November 14, 2013, and a claim construction hearing is set to commence on January 17, 2014 (doc. # 56). The parties stipulated to a protective order, which was entered on November 9, 2012 (doc. # 40: Prot. Order). The protective order contains, among other provisions, a "prosecution bar" (*Id.* at ¶ 11).

On May 3, 2013, Nationwide filed a motion asserting that pursuant to the prosecution bar, Allstate should be barred from disclosing highly confidential information to Allstate's retained expert, Mr. Thomas Bakos (doc. # 61). Mr. Bakos consults on patenting in the insurance field. He has "assisted clients with determining whether particular technologies, processes, or concepts are potentially inventive based on [his] knowledge and expertise in the insurance industry," and he has "advised clients on prior art as well as the state of the art in a

particular insurance field" (doc. # 71: Pl.'s Opp'n to Defs.' Mot., Ex. A: Bakos Decl. at ¶ 3). Mr. Bakos is a co-inventor on: (1) an unpublished, pending patent application entitled "System and Method for Providing a Guarantee with Deferred Annuity for Insuring a Security;" (2) a published pending patent application entitled "System and Method for Determining a Premium for Insurance for a Security;" (3) two published patents entitled "Method and Apparatus for Bundling Insurance Coverages in Order to Gain a Pricing Advantage;" and (4) two published patents entitled "System and Method for Determining a Premium for Insurance for a Security" (*Id.* at ¶ 7). He has also helped draft a pending patent application relating to life insurance products, but he is not involved in any continued prosecution of that application and has no plans to be involved in the future (Pl.'s Opp'n at 4).

This motion was referred to this Court for decision (doc. # 70), and the motion is now fully briefed. For the reasons that follow, we deny Nationwide's motion.

**I.**

We begin with a discussion of the prosecution bar to which the parties agreed in the protective order. The bar addresses the limitations imposed on persons who review two different categories of information.

*First*, the prosecution bar states that for two years after the conclusion of the case, any individual who has reviewed Highly Confidential or Highly Confidential-Source Code information may not be "involved in the prosecution of patents or patent applications relating to the claimed subject matter of the patents asserted in this action, including without limitation any patent or application claiming priority to or otherwise related to the patents asserted in this action" (Prot. Order at ¶ 11). "Prosecution" is defined as "directly or indirectly drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims" (*Id.*).

2

*Second*, the prosecution bar states that "any individual for or representing the receiving party who has reviewed a pending patent application relating in any way to the subject matter of the patents asserted in this action shall not be involved" in the prosecution of any non-public patent claims pertaining to that patent application through the pendency of that patent application or until it becomes publicly available (*Id.*).

Nationwide relies on the prosecution bar governing those who review Highly Confidential or Highly Confidential-Source Code information in its effort to bar Allstate from disclosing that kind of information to Mr. Bakos. We therefore address two other portions of the protective order relevant to this issue.

The prosecution bar does not prevent an individual who has reviewed Highly Confidential or Highly Confidential-Source Code information from engaging in any and all activity in the Patent Office. Rather, the bar specifically allows one who has reviewed that information to "advis[e] his or her clients about the content and applicability of prior art cited to or by the Patent Office during any such proceeding[s]," and to "participat[e] in any interference, reissue, reexamination, review or other proceeding involving any patents or patent applications relating to the claimed subject matter of the patents asserted in this action provided their participation does not include directly or indirectly drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims" (Prot. Order at ¶ 11).

In addition, under the protective order, an expert or consultant to whom a party seeks to disclose Confidential, Highly Confidential, or Highly Confidential-Source Code information must first sign an "undertaking" agreeing to be bound by the Court's protective order and submitting to the Court's jurisdiction for purposes of enforcing the expert's obligations pursuant

3

to the undertaking (Prot. Order at ¶ 4(d); Prot. Order, app 1). On April 2, 2013, Mr. Bakos signed the undertaking (Pl.'s Opp'n, Ex. A-2: Bakos Undertaking at 1).

## II.

As the prosecution bar applies to "any individual," there is no dispute that the bar applies to retained experts. Indeed, Allstate contends that because Mr. Bakos has agreed to be bound by the terms of the protective order, he should be allowed to review Nationwide's highly confidential information (Pl.'s Opp'n at 5-6). In his declaration submitted with Allstate's opposition to Nationwide's motion, Mr. Bakos further stated that in signing the undertaking to the protective order, he agreed to be bound by the prosecution bar's restriction on certain patent prosecution activities, to use all confidential material only for purposes of this case, to not disclose that information to anyone else, and to return or destroy the information upon request (*Id.*, Ex. A: Bakos Decl. at ¶¶ 2, 5). Nationwide counters that Mr. Bakos's undertaking does not sufficiently guard against his inadvertent misuse of confidential information now or in the future, because no matter how "resolute or firm" Mr. Bakos is in his commitment to abide by the protective order, he cannot compartmentalize the information he learns in this case (doc. # 72: Defs.' Reply at 3).

Nationwide's argument "misunderstands the nature of a patent prosecution bar in a protective order." *Trading Techs. v. GL*, Nos. 05 C 4120, 05 C 5164, 2011 WL 148252, at *8 (N.D. Ill. Jan. 18, 2011). The patent prosecution bar presents a choice that the attorney or expert to whom it is applied must make:

> a patent prosecution bar in a protective order reflects a balance wherein an attorney agrees to give up a specific scope of activities for the specific duration of the bar in exchange for access to certain confidential information. As Judge Moran aptly put it: 'It's a choice. . . . [A] party . . . has a choice to say, okay, I am going to use this attorney as part of my litigation team. Or I am going to use this attorney as part of my patent application team. But you can't do both.'

*Id.*

Thus, the prosecution bar provides a choice. An individual subject to the bar is not disqualified from viewing highly confidential information: if the individual elects to forego certain prosecution activities for the specified duration, that individual may review highly confidential information. If the individual chooses not to forego the prosecution activities, then that individual may not review highly confidential information. If Mr. Bakos is willing to forego the prosecution activities that are proscribed if he views Highly Confidential or Highly Confidential-Source Code information, then Allstate is entitled to show him that information.

Here, as in the *Trading Technologies* case, "[d]efendants have not pointed out any case, nor have we found one, where an absolute bar against an [individual's] access to a wide range of confidential information in a protective order was held to 'reasonably reflect the risk presented by the disclosure of proprietary competitive information.'" *Trading Techs.*, 2011 WL 148252, at *8 (quoting *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1381 (7th Cir. 2010)). And, as the court in *Telular Corp. v. Vox2, Inc.*, No. 00 C 6144, 2001 WL 641188, at *2 (N.D. Ill. June 4, 2001), we "ha[v]e no reason to question [Mr. Bakos's] candor in agreeing to be bound by the protective order and to only use confidential material disclosed to him in the present litigation."

Nationwide suggests that we should give less weight to Mr. Bakos's representations than we would give to those of an attorney (*see* Defs.' Reply at 9-10). We find this argument unpersuasive. Under the protective order, an expert such as Mr. Bakos must take a step before

5

viewing Highly Confidential or Highly Confidential-Source Code information that is not required of an attorney: he must sign an undertaking in which he commits to follow the restrictions of the protective order and submit to the jurisdiction of the Court to address any violations of that commitment (Prot. Order at ¶ 4(b)). To be sure, attorneys are bound by unique ethical rules *vis a vis* the Court and their clients. But, Mr. Bakos faces serious professional, practical, and legal ramifications if he does not abide by the protective order. We deem that sufficient to deter a non-attorney such as Mr. Bakos from violating the protective order.[1]

Nationwide also argues that Mr. Bakos is "merely a retained consultant," and thus Allstate would not be disadvantaged or prejudiced if Mr. Bakos was "disqualif[ied]" from viewing Highly Confidential or Highly Confidential-Source Code information (Defs.' Reply at 8). We disagree. While in *Trading Technologies* this Court found the risk of prejudice was high because the individual at issue was the lead attorney on the case, it does not follow that there is automatically little risk of prejudice to a party that is compelled to forego its first choice of retained expert or consultant. At the risk of stating the obvious, we note that patent litigation generally presents issues that involve substantial complexity. The role of an expert in assisting a party in presenting these issues to a court and jury in an intelligent and understandable fashion can be central to the outcome of the case. To suggest that because there are hundreds of people in Chicago who, like Mr. Bakos, are actuaries, and that they all are fungible (Nationwide Mem. at 2, 15), blinks this reality. A party's choice of an expert is a critical one, and we would not bar

---

[1] To the extent that Nationwide viewed such an undertaking as insufficient to allow an expert to view Highly Confidential or Highly Confidential-Source Code information under the prosecution bar, Nationwide could have sought a protective order that applied the prosecution bar only to attorneys and not to "any individual" and that categorically barred experts who engage in "prosecution" activity from seeing any Highly Confidential or Highly Confidential-Source Code information. Nationwide did not seek a protective order that set forth such a categorical restriction when it negotiated the protective order last fall, and it has offered no good cause for such a categorical restriction now.

a party from exercising that choice absent a showing of good cause. Nationwide has failed to make that showing.[2]

### III.

Nationwide contends that the risk of Mr. Bakos violating the protective order is particularly heightened because he is currently involved in activities that would violate the prosecution bar in the protective order, including ongoing prosecution of his own pending patent applications (Defs.' Reply at 3). Specifically, Mr. Bakos is listed as a co-inventor on two pending patent applications – an unpublished application entitled "System and Method for Providing a Guarantee within a Deferred Annuity for Insuring a Security" and a published application entitled "System and Method for Determining a Premium for Insurance for a Security" (Bakos Decl. at ¶ 7). However, Mr. Bakos states that he is "not currently engaged in any patent prosecution activities relating to these applications," and that he has assigned away his rights in these applications and has no financial interests in them (*Id.* at ¶¶ 9-10). Mr. Bakos also states that "[i]n the future, it is possible that [he] could be asked to provide assistance in responding to an Office Action, such as, for example, providing a declaration attesting to certain facts" concerning the pending applications (*Id.* at ¶ 9).

At the threshold, Nationwide's argument turns on whether Mr. Bakos's work on these pending patent applications would fall within the prosecution bar that applies to one who views Highly Confidential or Highly Confidential-Source code information – that is, whether the pending patent applications "relat[e] to the claimed subject matter of the patents asserted in this

---

[2]The cases that Nationwide cites for its proposition that courts "often disqualify consultants" under protective orders do not support this statement (Defs.' Mem. at 14). For example, the dispute at issue in *Applied Signal Tech., Inc. v. Emerging Markets Comms.*, No. 09 C 2180 (DMR), 2011 WL 197811 (N.D. Cal. Jan. 20, 2011), occurred before the court entered a protective order because the parties disagreed on several issues, including whether expert witnesses who view confidential information should be subject to a prosecution bar. The court ultimately held that it was appropriate to apply the prosecution bar to expert witnesses.

action." The parties agree that the phrase "claimed subject matter" is narrower than the phrase "subject matter," which governs the application of the bar that applies when one has reviewed a pending patent application relating in any way to the subject matter of the patents asserted in this action (*see* 6/11/13 Hearing Tr. at 9-11). But, they do not agree on precisely what the phrase "claimed subject matter" encompasses.

We are skeptical that this phrase sweeps as broadly as Nationwide claims, to include anything relating to "processing insurance claims and providing insurance" (Defs.' Mem. at 10). While Nationwide notes that the "relating to the subject matter of the patents-in-suit" language is routinely used in patent prosecution bars, the cases that Nationwide cites do not assist this Court in determining how that language – or the more narrow phrase "relating to the claimed subject matter" – should be interpreted (*Id.* at 14).[3] That said, we have concerns with Allstate's definition that requires the bar to be "narrowly tied" to the claimed inventions (Pl.'s Opp'n at 1), since in advance of the *Markman* hearing we do not know what claims are in dispute and what their construction may be.

But, we need not resolve this dispute over the interpretation of "relating to the claimed subject matter." Mr. Bakos has signed the undertaking, and he represents that it is only "possible" – not probable – that he would be called on to provide assistance on the pending patent applications (Bakos Decl. at ¶ 9). In addition, if he is called on to provide assistance, it is not clear if it would involve matters barred, rather than permitted, by the protective order (Prot. Order at ¶ 11). Recall that the protective order allows someone subject to the prosecution bar to

---

[3]*See Cummins-Allison Corp. v. Glory*, 02 C 7008, slip op. at 18-19 (N.D. Ill. Dec. 31, 2003) (holding that complete bar on outside patent counsel's access to confidential information was too broad, and noting that it was common to not further define "related to" patents in suit; *Cheah IP LLC v. Plaxo, Inc.*, 2009 WL 1190331 (N.D. Cal. May 4, 2009) (holding that the protective order need not "specifically define the types of materials to which any prosecution bar should be limited").

8

participate in proceedings "involving any patents or patent applications relating to the claimed subject matter of the patents asserted in this action," so long as that participation does not include "directly or indirectly drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims" (Prot. Order at ¶ 11). We will not bar Mr. Bakos from viewing Highly Confidential or Highly Confidential-Source Code information in this case on the mere "possibility" he might provide assistance in connection with the pending applications that might (or might not) fall within the bar.

Nevertheless, we recognize that the line that separates proscribed from permitted prosecution activities may not have been drawn by the parties in their agreed protective order with the clarity they now would prefer. Thus, we order that during the pendency of this case and for two years after the conclusion of this case, Mr. Bakos must disclose to Allstate's attorneys, who must in turn disclose to Nationwide's attorneys, each time Mr. Bakos is "asked to provide assistance in responding to an Office Action," with respect to the pending patent applications identified in Paragraphs 7(c) and 7(d) of his declaration. That will allow the parties to have a meaningful discussion about whether a specific action that Mr. Bakos is asked to take would violate the bar. We view that requirement as a way to avoid disputes (after the fact) if Mr. Bakos is called upon to provide the assistance that he envisions as "possible."

## CONCLUSION

For the foregoing reasons, Nationwide's motion (doc. # 61) is denied, and Allstate's attorneys are ordered to disclose to Nationwide's attorneys each time Mr. Bakos is asked to

provide assistance in responding to an Office Action related to the pending patent applications identified in Paragraphs 7(c) and (d) of his declaration.

**ENTER:**

_____
**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: June 28, 2013**